846 F.2d 129
 56 USLW 2640, 21 Soc.Sec.Rep.Ser. 522,
Medicare&Medicaid Gu 37,089
 The NEW YORK STATE DEPARTMENT OF SOCIAL SERVICES and Cesar
Perales, as Commissioner of the New York State
Department of Social Services,
Plaintiffs- Appellants,
v.
Otis R. BOWEN, Secretary of Health and Human Services,
Defendant-Appellee.
 No. 468, Docket 87-6200.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 25, 1988.
Decided April 28, 1988.
 
 Laurel Weinstein Eisner, Asst. Atty. Gen., New York City (Robert Abrams, Atty. Gen., of the State of N.Y., Mary Fisher Bernet, Asst. Atty. Gen., of counsel), for plaintiffs-appellants.
 Paul K. Milmed, Asst. U.S. Atty. (Rudolph W. Giuliani, U.S. Atty., S.D.N.Y., Nancy Kilson, Asst. U.S. Atty., David Engel, Asst. Regional Counsel, U.S. Dept. of Health and Human Services, of counsel), for defendant-appellee.
 Before OAKES, NEWMAN, and MINER, Circuit Judges.
 OAKES, Circuit Judge:
 
 
 1
 The New York State Department of Social Services (NYSDSS or "the Department") seeks to obtain the right to appeal decisions of the United States Department of Health and Human Services (HHS) that deny Medicare benefits to nursing home patients whose health care, as a result of the denials, is paid for by NYSDSS with Medicaid funds. A Medicare beneficiary or the provider of health care can take an administrative appeal, with judicial review, from a denial of Medicare coverage. 42 U.S.C. Secs. 1395ff(b), 405(b) and (g) (1982 & Supp. III 1985); 42 C.F.R. Secs. 405.701-.750 (1986). HHS maintains that a state Medicaid agency, however, cannot appeal an adverse determination despite state law making the state agency a subrogee of the benefited patient and federal law that mandating states pursue recovery from third parties responsible for the care of Medicaid recipients. When NYSDSS challenged HHS's position and practice, the United States District Court for the Southern District of New York, Robert J. Ward, Judge, upheld the federal agency's position. New York State Dep't of Social Servs. v. Bowen, 661 F.Supp. 1537 (S.D.N.Y.1987). On the state's appeal we reverse.
 
 STATUTORY BACKGROUND
 A. Medicare
 
 2
 Medicare is a federally funded system of health insurance for the aged and disabled administered by HHS. 42 U.S.C. Secs. 1395-1395xx (1982 & Supp. III 1985). Individuals eligible under Title II of the Social Security Act may receive benefits under two parts of the Medicare program, only the first of which, Part A, concerns us here. See 42 U.S.C. Sec. 1395c. Part A covers the cost of inpatient hospital services for up to 150 days and post-hospital extended care, such as skilled nursing care, for up to 100 days during any "spell of illness," 42 U.S.C. Sec. 1395d(a), less coinsurance and deductibles under 42 U.S.C. Sec. 1395e.
 
 
 3
 When HHS or its fiscal "intermediary," 42 C.F.R. Sec. 400.202 (1986) (usually a health insurance company), denies Medicare coverage, the individual or the health care provider may request reconsideration, 42 C.F.R. Sec. 405.710-.717 (1986), and, in the event of denial, may appeal to the HHS Appeals Council, 20 C.F.R. Sec. 404.967 (1987); 42 C.F.R. Sec. 405.724 (1986), and ultimately to the courts. 42 U.S.C. Secs. 1395ff(b), 405(b) and (g); 42 C.F.R. Sec. 405.730. HHS, however, denies state agencies the right to appeal even when the state has paid the cost of the beneficiary's care with Medicaid funds and Medicare reimbursement is denied.
 
 B. Medicaid
 
 4
 Medicaid, of course, is a jointly funded federal-state program that pays for necessary medical care for indigent individuals. 42 U.S.C. Sec. 1396 (1982 & Supp. III 1985). As in the case of Medicare, providers of medical services to Medicaid beneficiaries are reimbursed on a fixed schedule of rates. 42 U.S.C. Sec. 1396a(a)(13). When HHS or its fiscal intermediary denies Medicare benefits for skilled nursing care administered to an individual who also qualifies for Medicaid benefits, the state agency responsible for administering the Medicaid program must reimburse the nursing home for the patient's care as well as pay any coinsurance and deductibles under Part A. 42 U.S.C. Sec. 1396a(a)(15). The Medicaid statute mandates that the state agency seek reimbursement from third parties liable for the care and services paid for by Medicaid "where the amount of reimbursement the State can reasonably expect to recover exceeds the costs of such recovery." 42 U.S.C. Sec. 1396a(a)(25). Congress amended the Social Security Act in 1977 to permit states to require Medicaid beneficiaries to assign to the state "any rights ... to support ... for the purpose of medical care ... and to payment for medical care from any third party...." Pub.L. No. 95-142, Sec. 1912(a)(1)(A), 91 Stat. 1175, 1196 (1977) (codified as amended at 42 U.S.C. Sec. 1396k(a)(1)(A)). At the same time Congress added a new section that imposed sanctions to deter private insurers from restricting coverage so as to shift liability to Medicaid. Id. Sec. 11(a)(o), 91 Stat. at 1196 (codified as amended at 42 U.S.C. Sec. 1396b(o)). The section does not mention public insurance programs. In the Deficit Reform Act of 1984, Congress made mandatory the assignment to the state Medicaid agency of a Medicaid recipient's rights to third-party reimbursement, requiring such assignment obligations to be included in each state plan. Pub.L. No. 98-369, Sec. 2367(a), 98 Stat. 1108 (codified as amended at 42 U.S.C. Sec. 1396a(a)(45)), and, in the Consolidated Omnibus Budget Reconciliation Act of 1985, Congress specified that state agencies must seek reimbursement from liable health insurers. Pub.L. No. 99-272, Sec. 9503, 100 Stat. 205 (codified as amended at 42 U.S.C. Sec. 1396a(a)(25)). The new provisions also required state agencies to "collect[ ] ... sufficient information ... to enable the State to pursue claims against such third parties" and submit to the Secretary a third-party recovery plan or risk fiscal sanctions. Id.
 
 C. New York Law
 
 5
 Not surprisingly, New York State law complements the federal scheme. New York Social Services Law Sec. 363-a (McKinney 1983) designates NYSDSS as the state agency responsible for administering the Medicaid program. Section 367-a(2)(b) subrogates the Department to "any rights [an applicant or recipient of medical assistance] may have to medical support or third party reimbursement" and section 366(4)(h) (McKinney Supp. 1988) requires Medicaid recipients to assign their rights to benefits from third parties to NYSDSS. New York State Insurance Law Sec. 3212(e)(3)(A) (McKinney 1985 & Supp. 1988) provides that the Department's right of subrogation under any health insurance program shall be valid to the extent benefits are available to the individual.
 
 FACTUAL BACKGROUND
 
 6
 This case arose as a result of HHS's refusal to grant Medicare Part A benefits to 102 elderly nursing home residents, each of whom was a dual Medicare/Medicaid beneficiary. In each case, the patient's nursing home submitted a timely request for Medicare payment for the skilled nursing care provided. HHS or its intermediary denied each request after determining that the patient did not require skilled nursing care and only received custodial care, which is not covered by Medicare. The nursing home filed a timely request for reconsideration pursuant to 42 C.F.R. Sec. 405.710-.711, which in each case resulted in HHS's affirming its determination that none of the patients required or received care covered by Medicare. The obligation to reimburse the nursing homes thus fell upon NYSDSS, as payor of last resort under the Medicaid program. NYSDSS, after determining that in each instance the decision of HHS or its intermediary was wrong and that skilled nursing care had been both necessary and provided, notified HHS that it was the statutory subrogee of the recipients' Medicare rights under state law and, as subrogee, filed hearing requests pursuant to 42 U.S.C. Secs. 405(b), 1395ff(b). HHS dismissed the requests on the grounds that NYSDSS was neither a party nor a representative of a party to the reconsideration determination and therefore not a proper party to request a hearing. The Appeals Council affirmed the dismissals on the ground that none of the criteria for review specified in 20 C.F.R. Sec. 404.970 had been met.
 
 
 7
 While pursuing its rights as subrogee, NYSDSS also sought to obtain, and did obtain, forms signed by the nursing home residents or their next of kin, appointing the state Commissioner or his agent the beneficiary's representative for purposes of appealing the Medicare denials. HHS also rejected these appointment forms, asserting that the Department was not a proper representative of the beneficiaries. This suit followed. NYSDSS did not seek judicial decision on the merits of the denials, but only the right to pursue administrative and judicial review. Both the state and federal agencies moved for summary judgment, HHS asserting that subrogation of the Department to the recipients' Medicare rights was barred by an HHS regulation precluding "assignment" of Medicare rights, 42 C.F.R. Sec. 433.146(b) (1987).
 
 
 8
 Two years after the complaint was filed and pending disposition, HHS modified its policy and agreed to permit NYSDSS to appeal Medicare denials where an authorization form was signed by the patient or the patient's next of kin. The Department nevertheless is pursuing the action both because HHS is not bound by any official guideline or regulation to follow this policy modification and because it is often impracticable, if not impossible, to obtain an appointment form from an institutionalized and sick elderly person, as Fox v. Bowen, 656 F.Supp. 1236, 1242 (D.Conn.1987), and David v. Heckler, 591 F.Supp. 1033, 1044 (E.D.N.Y.1984), suggest. Moreover, next of kin, if they exist at all, frequently cannot be located or are unwilling to assist. Even if an appointment form is obtained, if the beneficiary dies before the appeals process is completed, HHS has claimed that the case should be dismissed for lack of a real party in interest because the appointment form is no longer valid. See, e.g., Gregorace v. Bowen, No. Civ. 86-2559 (E.D.N.Y. Aug. 4, 1987) (available on WESTLAW, 1987 WL 15318).
 
 
 9
 The district court, while ruling that it had subject matter jurisdiction over the challenge to HHS policy, held that neither the state subrogation law nor the Medicare statute permits the state Medicaid agency to appeal Medicare denials, 661 F.Supp. 1537. The court relied on the language of 42 U.S.C. Sec. 1395ff(b), which "limits administrative appeals to individual beneficiaries or duly appointed representatives acting on behalf of beneficiaries," id. at 1549, adding that the state's interests may conflict with the interests of a beneficiary. Id. The court found that Congress enacted the third-party liability and assignment of rights provisions of the Medicaid statute, 42 U.S.C. Secs. 1396a(a)(25), 1396a(a)(45), 1396k, to reduce federal costs. Id. at 1552-54. Noting that the state agency is directed to seek recoupment of funds only if the amount reasonably expected to be recovered exceeds the cost of recovery, 42 U.S.C. Sec. 1396a(a)(25)(B), the district court observed that the federal government must be an intended beneficiary of this cost-benefit analysis because approximately one-half of Medicaid recoupments from third parties must be returned to the federal government, 42 U.S.C. Sec. 1396b(d)(1). The court concluded that "Congress clearly did not intend to reduce state Medicaid expenditures without comparable federal recoupment and especially not at federal expense." Id. at 1553. The district court read 42 U.S.C. Sec. 1396a(a)(25) to permit recovery against third parties only if it would result in a reduction of federal expense, or a reimbursement to the federal government. Id. at 1553-54. The court concluded that NYSDSS's position was inconsistent with this portion of the federal statute, saying that
 
 
 10
 [s]ubrogation of Medicaid rights effected automatically by state statute would result in an increase in administrative hearings and civil litigation against the federal government, both of which would be financed in part by federal funds. As such, the primary purpose of such hearings and litigation would be to recoup state funds at federal expense, a purpose contrary to the intent of 42 U.S.C. Sec. 1396a(a)(25).
 
 
 11
 Id. at 1554 (footnote omitted). We disagree.
 
 DISCUSSION
 
 12
 Preliminarily we recognize that the statute pertaining to administrative appeals does not explicitly authorize a state agency to appeal Medicare denials; the language refers to appeals only by individual beneficiaries, 42 U.S.C. Sec. 1395ff(b), or, in the case of individuals who do not exercise their appeal rights, a provider of services, 42 U.S.C. Sec. 1395pp(d). However, the statute has been given a regulatory gloss. HHS regulations, on the one hand, recognize that where it is impracticable for the individual beneficiary to execute a request for payment because of his physical or mental condition, the request may be executed by his legal guardian or next of kin, a representative of an institution (other than the service provider), or "a representative of a governmental entity which had been providing him welfare assistance." 42 C.F.R. Sec. 405.1664. On the other hand, the regulation pertaining to appeals limits administrative and judicial review of a denial of benefits only to the individual beneficiary or, if he is deceased, a representative of his estate or the service provider. 42 C.F.R. Sec. 405.710. Relying on this regulation, HHS contends that although a state agency such as NYSDSS may file a request for payment as "a governmental entity which had been providing ... welfare assistance" under section 405.1664, it may not seek administrative or judicial review of the denial of such a request. HHS's argument that the language of the Medicare statute together with HHS regulations preclude appeals by state agencies is betrayed by its present practice of permitting NYSDSS to pursue an appeal if it obtains an authorization form signed by the patient or the patient's next of kin and by its past practice--concededly required by statute--of permitting the state to appeal if it is appointed by the Surrogates' Court as the legal representative of the beneficiary or, in the case of the beneficiary's death, his estate. Moreover, HHS, in a letter written after its brief on appeal was filed, concedes that the interests of a state Medicaid agency pursuing a Medicare appeal by subrogation do not conflict with those of the Medicare beneficiary.
 
 
 13
 To be sure, we owe considerable deference to an administrative agency charged with interpreting a statute, where its interpretation is a "permissible construction," Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984), particularly here given the intricacies of the Medicare and Medicaid statutes. See State of New York v. Bowen, 811 F.2d 776, 778 (2d Cir.1987); DeJesus v. Perales, 770 F.2d 316, 327 (2d Cir.1985), cert. denied, 478 U.S. 1007, 106 S.Ct. 3301, 92 L.Ed.2d 715 (1986). However, we think that HHS suffers from tunnel vision when it sees only Medicare and ignores the Medicaid program. More than one scheme of assistance exists, as Congress recognized when it strengthened Medicaid's third party liability provisions. The Senate Report stressed that "Medicaid is intended to be the payer of last resort, that is, other available resources must be used before Medicaid pays for the care of an individual enrolled in the Medicaid program." S.Rep. No. 146, 99th Cong., 2d Sess. 1, 312, reprinted in 1986 U.S.Code Cong. & Admin.News 42, 279. Thus, the Medicaid statute mandates that states require applicants and recipients to "assign the State any rights ... to support ... for the purpose of medical care ... and to payment for medical care from any third party." 42 U.S.C. Sec. 1396k(a)(1)(A).
 
 
 14
 It cannot be disputed, as the district court conceded, that Medicare is a "third party" for purposes of the third party liability provision, 42 U.S.C. Sec. 1396a(a)(25). See 661 F.Supp. at 1551-52. Section 1395c of the Social Security Act describes Medicare as a health "insurance program." Section 1396a(a)(25)(A) specifies that liable third parties include "health insurers." While we have long since learned not to put too much stock in Social Security office manuals, see Schweiker v. Hansen, 450 U.S. 785, 789-90, 101 S.Ct. 1468, 1471-72, 67 L.Ed.2d 685 (1981), rev'g Hansen v. Harris, 619 F.2d 942 (2d Cir.1980), several HHS internal documents define Medicare as a third party resource. See, e.g., HCFA Regional Office Manual, Part 6, Sec. 1810A, reprinted in 3 Medicare & Medicaid Guide (CCH) p 14,749 at 6430 ("Examples of third party resources are ... Medicare...."); id. at 6436 ("Hospital life time reserve days under Medicare (title XVIII) is an example of a third party resource."); HCFA State Medicaid Manual, Pub. 45-3, Transmittal No. 10 Sec. 3900 (Apr.1987), reprinted in New Developments 1987-2 Medicare & Medicaid Guide (CCH) p 36,386 at 14,587. Indeed, in a case pending in the United States District Court for the Southern District of New York, HHS recently admitted that "[t]he Secretary views Medicare as a third-party payor with respect to dual eligibles." Affidavit of Robert A. Streiner, Director of the Bureau of Eligibility Reimbursement and Coverage in the Health Care Financing Administration, United States Department of Health & Human Services at 3, New York City Health & Hosp. Corp. v. Perales, 87 Civ. 4896 (Sept. 11, 1987); see also HHS Memorandum of Law at 14, New York City Health & Hosp. Corp., 87 Civ. 4896.
 
 
 15
 Although the district court found that Medicare was a third party resource, it concluded that state recoupment of Medicare funds would require federal expenditures which it considered inconsistent with the requirement that states pursue liable third parties "where the amount of reimbursement the State can reasonably expect to recover exceeds the costs of such recovery." 42 U.S.C. Sec. 1396a(a)(25)(C). We disagree with this interpretation. First, there is no indication that the provision's cost-benefit analysis should operate to spare the federal government the costs of defending against appeals. Rather, the provision seems designed as a defense for the state when the federal government complains that the state is not being sufficiently aggressive in recovering from third parties. The provision clearly addresses the costs of recovery, not the identity of the third parties from which recovery is sought. The Secretary concedes that the HHS regulations do not preclude Medicare appeals by a state when it has obtained a valid appointment as legal representative of a beneficiary, or has an appropriate form duly signed by such a beneficiary. Yet, insofar as the state is concerned, the costs of review and appeal involved with such appointments are at least as great if not greater than when the state acts as the beneficiary's subrogee. It seems hypertechnical and inconsistent to say that where the state has not been able to obtain the necessary authorization from a beneficiary or the beneficiary's representative it may not appeal unless it goes to the expense and, we may take judicial notice, delay of state Surrogate Court proceedings. As for federal expenses, appeals of Medicare denials may result in the same administrative cost whether they are pursued by the beneficiary, the beneficiary's next of kin, a provider, NYSDSS by appointment of the beneficiary or the beneficiary's representative, or NYSDSS as subrogee. HHS, by statute, regulation or policy, permits all but the last even though the last may be the least expensive. It is illogical to suggest, as HHS contends, that the statutory and regulatory scheme of Medicare abrogates the principle that "Medicaid is the payer of last resort" and renders unenforceable the Medicaid statutes requiring states to recover from all responsible third parties (including the Medicare program). The deference ordinarily due the federal agency charged with interpreting a statute is unnecessary and inappropriate here where HHS's interpretation is not only inconsistent with the language of the Medicaid statute and its purpose, see F.E.C. v. Democratic Senatorial Campaign Comm., 454 U.S. 27, 32, 102 S.Ct. 38, 42, 70 L.Ed.2d 23 (1981), but also in defiance of common sense.
 
 
 16
 Judgment reversed; cause remanded for further proceedings in accordance with opinion.